## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | | BEFORE THE HONORABLE |
| | | JUDGE ROBERTS |
| EDWARD ALABASTRO JAVIER | ) | Docket Number: 08-CR-60 |

### SENTENCING MEMORANDUM
### ON BEHALF OF ED JAVIER

Through counsel, EDWARD JAVIER files the following Sentencing

Memorandum setting forth all factors that the Court should consider in determining what

type and length of sentence is sufficient, but not greater than necessary, to comply with

the statutory directives set forth in 18 U.S.C. § 3553(a).  Further, defendant through his

counsel, hereby provide notice to the court and all counsel of its intention to introduce

oral argument in support of said sentencing memorandum at the time of the hearing

scheduled for July 18, 2008, at 3:30 p.m.

> There is a certain degree of satisfaction in having the courage to admit one's errors. It not
>
> only clears up the air of guilt and defensiveness, but often helps solve the problem
>
> created by the error.
>
> - - Dale Carnegie

## The Application of Sentencing under *Booker*

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding

in Blakely v. Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S.

466 (2000) applies to the Federal Sentencing Guidelines. United States v. Booker, 125 S.

Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court

found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court.  Id. at 751.  Accordingly, reaffirming its holding in Apprendi, the Court concluded that

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

Id. at 756.[1]

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1) or which rely upon the Guidelines's mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment holding.  Booker, 125 S. Ct. at 756.  Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." Id. at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker,

---

[1]    It should be noted that the fact-of-prior-conviction exception to the Apprendi rule is based on Almendarez-Torres v. United States, 523 U.S. 224 (1998).  But the continued vitality of this case and the exception it created has been called into question not only by the broad reasoning of Booker itself, which would seem to apply to all enhancement facts, including facts of prior conviction, but also more recently by Shepard v. United States, 125 S. Ct. 1254 (2005).  Shepard sharply limits the Almendarez-Torres exception to the fact of prior conviction as determined by the judicial record, and excludes facts about the conviction which are not contained in such conclusive records.  As Justice Thomas notes, moreover, five justices agree that Almendarez-Torres was wrongly decided.  125 S. Ct. at 1264 (Thomas, J., concurring).

requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A.
§ 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in
light of other statutory concerns as well, see § 3553(a).

Booker, 125 S. Ct. at 757.  Thus, under Booker, sentencing courts must treat the

guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose a

sentence sufficient, but not greater than necessary, to comply with the purposes set forth

in paragraph 2."  Section 3553(a)(2) states that such purposes are:

(A)    to reflect the seriousness of the offense, to promote respect for the
       law, and to provide just punishment for the offense;
(B)    to afford adequate deterrence to criminal conduct;
(C)    to protect the public from further crimes of the defendant; and
(D)    to provide the defendant with needed educational or vocational
       training, medical care, or other correctional treatment in the most
       effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs

sentencing courts to consider the following factors:

1) "the nature and circumstances of the offense and the history and characteristics
of the defendant" (§ 3553(a)(1);
2) "the kinds of sentences available" (§ 3553(a)(3);
3) "the need to avoid unwarranted sentence disparities among defendants with
similar records who have been found guilty of similar conduct" (§ 3553(a)(6); and
4) "the need to provide restitution to any victims of the offense."  (§ 3553(a)(7).

Other statutory sections also give the district court direction in sentencing.  Under

18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following

limitation: in determining whether and to what extent imprisonment is appropriate based

on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is

not an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under 18 U.S.C. § 3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added).  This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth.  *See* U.S.S.G. § 5H1.  See also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004); United States v. Naylor, __ F. Supp. 2d __, 2005 WL 525409, *2, 2005 U.S. Dist. LEXIS 3418 (W.D. Va. Mar. 7, 2005) (Jones, J.) (concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth when he committed his predicate offenses – he was 17 – and noting that in Roper v. Simmons, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of Booker and § 3553(a) make clear that courts may no longer uncritically apply the guidelines.  Such an approach would be "inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based

on judicial fact-finding, and the remedial majority in <u>Booker</u>, directing courts to consider

all of the § 3353(a) factors, many of which the guidelines either reject or ignore." <u>United

States v. Ranum</u>, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.).

As another district court judge has correctly observed, any approach which automatically

gives "heavy" weight to the guideline range "comes perilously close to the mandatory

regime found to be constitutionally infirm in <u>Booker</u>." <u>United States v. Jaber</u>, __ F. Supp.

2d __, 2005 WL 605787 *4 (D. Mass. March 16, 2005) (Gertner, J.).  <u>See also</u> <u>United

States v. Ameline</u>, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range

is "only one of many factors that a sentencing judge must consider in determining an

appropriate individualized sentence"), <u>reh'g en banc granted</u>, 401 F.3d 1007 (9th Cir.

2005).

      Justice Scalia explains the point well in his dissent from <u>Booker</u>'s remedial

holding:

> Thus, logic compels the conclusion that the sentencing judge,
> after considering the recited factors (including the
> guidelines), has full discretion, as full as what he possessed
> before the Act was passed, to sentence anywhere within the
> statutory range.  If the majority thought otherwise – if it
> thought the Guidelines not only had to be 'considered' (as the
> amputated statute requires) but had generally to be followed –
> its opinion would surely say so.

<u>Booker</u>, 125 S. Ct. at 791 (Scalia, J., dissenting in part).  Likewise, if the remedial

majority thought the guidelines had to be given "heavy weight," its opinion would have

said so.  The remedial majority clearly understood that giving any special weight to the

guideline range relative to the other Section 3553(a) factors would violate the Sixth

In sum, in every case, a sentencing court must now consider <u>all</u> of the §

3553(a) factors, not just the guidelines, in determining a sentence that is sufficient

but not greater than necessary to meet the goals of sentencing.  And where the

guidelines conflict with other sentencing factors set forth in § 3553(a), these

statutory sentencing factors should generally trump the guidelines.  <u>See</u> <u>United</u>

<u>States v. Denardi</u>, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in

part, dissenting in part) (arguing that since § 3553(a) requires sentence be no

greater than necessary to meet four purposes of sentencing, imposition of sentence

greater than necessary to meet those purposes violates statute and is reversible,

even if within guideline range).

<u>**Application of the Statutory Sentencing Factors**</u><br><u>**to the Facts of this Case**</u>

In the present case, the following factors must be considered when

determining what type and length of sentence is sufficient, but not greater than

necessary, to satisfy the purposes of sentencing:

1.    **The Nature and Circumstances of the Offense and the History and**
      **Characteristics of the Offender**

      **(a) Nature and Circumstances of Offense**

The offenses being charged against Mr. Javier are Count 1 – Conspiracy to

defraud the United States Government 18 USC §371 and Count 2 – Mail Fraud, 18

USC §1341/2.

These charges against Mr. Javier stem from one transaction that occurred

sometimes between February, 2003 and June, 2003 that essentially involved Mr.

Javier's company, Lifeline Infinity, providing a false Commercial Invoice and Packing Slip to the Ex-Im Bank certifying the purchase and shipment of approximately $870,000.00 worth of goods to the Philippines.  Truth be told, the transaction involving Mr. Javier's Company was actually a proverbial "drop in the bucket" of a nationwide scheme that defrauded the Ex-Im Bank of in excess of 80-100 million dollars.  The "Grand Scheme" as it will be referred to hereinafter, appeared to have been masterminded by Marilyn Ong and Iidefonso Ong, Jr., whose bench warrant's issued by Magistrate Judge Deborah A. Robinson, still remain active (Case Number: CR-07-260-RWR).  Apparently, the Ong's traveled this country seeking individuals with some degree of wherewithal to engage in this fraudulent scheme wherein, the Ong's would seduce legitimate business owners and through the allure of her reputation and  money would convince these people to act as "exporters" for goods that the Ong's never purchased or shipped.  It was through the manipulation of the Ong's (i.e., that the Ong's were actually established business people who owned homes in the United States, had political connections, and appeared to be genuinely respectable people) that Mr. Javier became involved with the Ex-Im Bank in the first place.  The irony of the case before this court is that my client, Mr. Javier, was the *only* person involved with the Grand Scheme who engaged in only one transaction.  Moreover, despite no contact from any law enforcement for over four years since the only transaction, he never did it again.  It should also be noted that when law enforcement finally did come knocking on Mr. Javier's door (in 2007), he was 100%, unconditionally

committed to assist law enforcement in any way he possible. The same cannot be said to the vast majority of the other defendants in the Grand Scheme (as will be more fully discussed below).

### (b) History and Characteristics of Mr. Edward Javier

Unfortunately, the first and only time that this court will have an opportunity to know Mr. Javier is through this criminal proceeding, which clearly does not show my client in the most favorable light. The fact that this court only knows of Ed Javier as someone who was a peripheral player in a Grand Scheme to defraud the Ex-Im Bank, does not do Mr. Javier justice. What the court may not be aware of is how Mr. Javier, a man who came to this country from humble beginnings as an immigrant from the Philippines, single-handedly raised seven children, made a life for himself and his family, and aside from the matter before the court, has never been involved in any criminal activity. We ask the court to judge Mr. Javier not based upon this one transaction, but as a man who has raised seven children none whom ever became involved in crime, drugs or not graduating from college.

Mr. Javier had no criminal history in 53-years on this planet, except for the issues that remain before the court. If the court was required to in effect "size someone up" for the purpose of sentencing (as it essentially must do in order to impose a reasonable sentence), would the court be more persuaded of a man's integrity based upon one instance of weakness or a lifetime of consistency? That is the question before the court in Mr. Javier's case…is the court going to judge

him based upon the one mistake he has made in 53-years, or the lifetime of good choices he has made prior thereto?

**2.      The Need for the Sentence Imposed To Promote Certain Statutory Objectives**:

**(A) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**.

In this case this court is charged with the duty to impose a sentence that would adequate punishes the defendant for the offenses committed. Here, placed in context of the sentences previously imposed by this court for the other defendants involved the Ong's Grand Scheme, Mr. Javier is at the bottom of the totem pole, comparatively speaking, and the sentence imposed should reflect the same. There is no question that Mr. Javier has accepted full responsibility for the poor decision making related to Ong's and the Ex-Im Bank transaction. The fact that Mr. Javier was forthcoming with law enforcement speaks volumes about my client, as he has come to the realization of the errors of his ways regarding his involvement.

**(B) to afford adequate deterrence to criminal conduct**

Fortunately for Mr. Javier, he had never been engaged in any criminal conduct for better than 53-years, and the fact that he was involved in only one transaction, there does not appear to be any evidence that would indicate that Mr. Javier would be likely to engage in any future criminal conduct. The shame and disgrace of having to tell his children of his mistakes that he made in this

situation more than deters any inclination of future criminal conduct.

**(C) to protect the public from further crimes of the defendant**

As indicated above, we respectfully request that this court assess Mr.
Javier based upon his 53-years of crime-free life rather than the one instance
where he made a poor choice. Further, the reality is that Mr. Javier engaged in
one transaction and one transaction only. It does not appear from the evidence
that anything precluded Mr. Javier from participating in more than one deal, aside
from his own decision not to be involved. This reasoning is buttressed by the fact
that law enforcement didn't approach Mr. Javier for over *four years* since the one
transaction. Therefore, it stands to reason that if Mr. Javier wanted to continue his
involvement in the Grand Scheme, he certainly could have.

**(D) to provide the defendant with needed educational or vocational
training, medical care, or other correctional treatment in the most
effective manner**

**3.      The Kinds of Sentences Available**

In <u>Booker</u>, the Supreme Court severed and excised 18 U.S.C. §
3553(b), the portion of the federal sentencing statute that made it
mandatory for courts to sentence within a particular sentencing guidelines
range. <u>Booker</u>, 125 S. Ct. at 756. This renders the sentencing guidelines
advisory. <u>Id.</u>

Consequently, the court does have the discretion to impose a
sentence that would depart downward from the Sentencing Guidelines of 24-30

months while still imposing a reasonable sentence in light of the offense.  As

noted, _Booker_ does provide the court with the opportunity to hear evidence as to

why the sentence imposed should be less than the Sentencing Guidelines.

**4.     The Sentencing Range Established by the Sentencing**

**Commission**

Based upon the agreement of the parties regarding the Sentencing

Guidelines, it was established that the range is between 24-30 months.  However,

we would argue that a downward departure is warranted from this range, as

multiple defendants already sentenced before this court have received less, for

significantly more involvement.  Moreover, the integrity of Mr. Javier has come

through as illustrated by his cooperation with law enforcement and his acceptance

of the responsibility of his actions.

**(B)**     5.       The Need To Avoid Unwarranted Disparities:

Perhaps it is Mr. Javier good karma that would bestow him with the hope

that every person needs in his one moment of despair…in this case, it is the

wisdom of the court.  The fact that this court has already been intricately involved

in the pleas and subsequent sentencing of other defendants in this Grand Scheme

allows Mr. Javier to distinguish himself from other defendants so that the court

may again use its wisdom to impose the just sentence in this case.  Below is a

summary of the sentences imposed thus far before this court, so as to illustrate (1)

the peripheral role of Mr. Javier in the Grand Scheme,(2) the absence of

significant pecuniary gain,  as well as (3) his zealous attempt to assist law

enforcement as best as he could.

1.   Daniel Curran – received 41 months in prison, was involved with the Ex-Im Bank for a period of more than five (5) years, received in excess of $400,000.00 in proceeds and misappropriated thirty (30) million dollars;

2.   David Villalongco – received 33 months in prison, was involved with the Ex-Im Bank for period of several years, and misappropriated sixteen (16) million dollars;

3.   Edward Chua – received 27 months in prison, was involved with the Ex-Im Bank for over six years, received in excess of $300,000, and misappropriated ten (10 ) million dollars

4.   Jaime Galvez – received 12 months in prison, admitted to being involved in excess of 35 transactions with the Ex-Im Bank, admittedly committed perjury before the Grand Jury in the District of Columbia, and admitted to destroying documents responsive to the Ex-Im Bank transactions when approached by law enforcement.

5.   Edward Javier – yet to be sentenced; involved in one transaction, misappropriated $870,000, received $13,000, completely cooperative with all law enforcement.

It appears from the sentences imposed by this court to the other defendants in this case that the Court has more than considered the all of the Sentencing Guidelines pursuant to §3553, and has determined that the applicable sentencing range thus far indicates a range between twelve (12) months (Defendant - Jamie Galvez) up to forty-one (41) months (Defendant Daniel Curran).  Consequently, the actions of Mr. Javier can now be compared with those of the previously sentenced defendant's to ensure that there are no unwarranted disparities in the sentences imposed.  To that end, it does appear as though Mr. Javier was the only defendant who was engaged in only one transaction, and did so for a period of less than five months between February and July, 2003.  Comparatively speaking, Edward Chua, who received a 27 month sentence, was involved in the Grand

Scheme for over six years and misappropriated ten times the amount of money that Mr. Javier did.  Further, the pecuniary gain received by Mr. Chua for his involvement was in excess of $300,000.  Mr. Javier received $13,000.00 for his participation in the one transaction. As a further comparison, Jaime Galvez, who received a 12-month sentence engaged in more than thirty-five (35) transactions, attempted to thwart the efforts of law enforcement by admittedly destroying pertinent documentation as well as lying to a Grand Jury in the District of Columbia.

We would argue that Mr. Javier is the least culpable of all defendants and is deserving of a significant downward departure from the sentencing guidelines and the most reasonable sentence permissible under §3553, merely based upon his limited participation in the Grand Scheme, his cooperation with law enforcement, and his acceptance of responsibility.

To summarize: The fact that this court has already engaged in a significant analysis of the facts, circumstances and players involved in the Grand Scheme (as well as applicable reasonable sentences for those defendants), we can use the court's prior sentencing range to determine what would be reasonable for Mr. Javier.  It is our view that the court should consider the following factors to distinguish Mr. Javier and impose a sentence that significantly departs (downward, of course) from the sentencing guidelines:

       a.  The number of transactions involved;

       b.  The length of time of involvement;

    c.  The pecuniary gain received;

    d.  What if any steps were taken to assist Law Enforcement;

    e.  ACCEPTANCE OF RESPONSIBILITY FOR ONES ACTIONS.

**(C)**   6.     The need to provide restitution to any victims of the offense

We would argue that a grant of probation would be warranted in this

Case, as it would provide the means most certain for Mr. Javier to

pay the restitution that will be due and owing at the conclusion of

this matter.  Mr. Javier is gainfully employed, accepts the

responsibility of his actions and is willing to do whatever necessary

"make things right", including, but not limited to paying the

Restitution.  As the court is aware, the likelihood of restitution being

paid increases exponentially while Mr. Javier has an opportunity to

earn.  Incarceration would delay and perhaps stifle Mr. Javier's

capacity to make restitution.


## Proposed "Statement of Reasons Pursuant to 18 U.S.C. § 3553(c)" for sentence below guideline range.

Mr. Javier would respectfully ask this court to impose a sentence below the

guideline range based upon the following:

1.  Mr. Javier has accepted full responsibility for his actions; and
2.  Mr. Javier has been fully cooperative with all law enforcement since the inception of the investigation; and
3.  Mr. Javier maintained the least culpability (comparatively speaking, based upon sheer number of transactions, duration of involvement and pecuniary amounts involved)

of all of the defendants involved in the Ex-Im
Bank transactions that have come before this court; and

4.  Mr. Javier has led a crime-free life for 53-years and has
not engaged in any other criminal activity either before or
since the one Ex-Im Bank transaction he has admitted to

### Conclusion

For the foregoing reasons, EDWARD JAVIER respectfully submits that a

grant of probation, or in the alternative, a  sentence of no more than one year is

sufficient, but not greater than necessary, to comply with the statutory directives

set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

_____

BRIAN J. VIRAG, ATTORNEY FOR

EDWARD JAVIER